ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2007 FEB 22 P 3:49
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

JEFFERY L. MASON, )
)
Plaintiff, )
)
v. ) CV 304-019
)
OFFICER SMITH, et al., )
)
Defendants. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The captioned matter is before the Court on Defendants' motion for summary judgment. (Doc. no. 57). Plaintiff opposes the motion. (Doc. no. 63). For the reasons below, the Court **REPORTS** and **RECOMMENDS** that the motion for summary judgment be **GRANTED**, that Plaintiff's case be **DISMISSED** without prejudice for failure to exhaust administrative remedies, and that this civil action be **CLOSED**.

## I. BACKGROUND

### A. Procedural History

Plaintiff, an inmate incarcerated at Telfair State Prison ("TSP") in Helena, Georgia, at the time the present action was filed, commenced the above-captioned case *pro se* pursuant to 42 U.S.C. § 1983.[1] Plaintiff is proceeding *in forma pauperis*. In its June 15, 2004 Order, the Court noted pleading deficiencies in Plaintiff's original complaint and ordered him to

[1]Plaintiff is, however, presently represented by counsel. (See doc. no. 50).

amend his complaint. (Doc. no. 7). On October 26, 2004, the Court screened Plaintiff's amended complaint and directed that service of process be effected upon Defendants Smith, Brown, Bridger, Burnette, and Madison for the alleged use of excessive force. (Doc. no. 10). On June 30, 2005, Defendants Bridger, Burnette, and Madison were dismissed from this action for failure to timely effect service of process. (Doc. no. 33). Defendants Smith and Brown filed their motion for summary judgment on September 19, 2006, asserting that Plaintiff's claims fail on the merits and that Plaintiff failed to exhaust administrative remedies. (Doc. no. 57).

**B. The Alleged Use of Excessive Force**

On April 5, 2003, while Plaintiff was watching television in the prison's "dayroom," a fight broke out nearby between another inmate and a corrections officer. (Doc. no. 8, pp. 1-2). The corrections officer called for help, and numerous officers arrived. (Id. at 2). According to Plaintiff, he was tackled during the ensuing confusion. (Id.). Plaintiff avers that he did not resist, but that several officers began severely beating him anyway. (Id. at 2-3). Plaintiff also alleges that after this beating, he was denied medical attention. (Id. at 3-4). As a result of the incident, Plaintiff claims to have suffered a dislocated shoulder, extreme pain, and whiplash. (Id. at 2).

**C. The Administrative Grievance Process**

Before assessing whether Plaintiff has complied with 42 U.S.C. § 1997e(a), it will be helpful to explain the grievance procedure used in the Georgia state prison system. Under the version of Standard Operating Procedure ("SOP") IIB05-0001 § VI in effect at the time of incident, an inmate had five (5) calendar days "from the date the inmate discovered, or

reasonably should have discovered, the incident giving rise to the complaint" to initiate the administrative process by filing a grievance. (Doc. no. 60, Ex. G, SOP IIB05-0001 § VI(D)(6) (Eff. date Aug. 15, 2001)). This time limit could be waived for good cause shown by the inmate. (Id.). After the grievance was submitted, the warden reviewed the grievance, rendered a decision, and provided the response to the inmate in writing. (Id.). The inmate could then appeal the warden's decision, within four (4) business days, to the Office of the Commissioner of the Department of Corrections ("DOC"), where the appeal would be reviewed and a decision rendered. (Id.). Once the Office of the Commissioner rendered its decision, the grievance process was completed. (Id.).

Under the current version of SOP IIB05-0001 § VI, an inmate has ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to initiate the administrative process by filing an "informal" grievance.[2] SOP IIB05-0001 § VI(B)(5) (Eff. date June 1, 2004). Like the former version of SOP IIB05-0001 § VI, the current SOP allows for a waiver of its timeliness provisions "for good cause." Id. § VI(D)(2).

The current version of the "Inmate Grievance Processing Manual," SOP IIB05-0001 § VI, Attach 9,[3] recognizes that "[i]n some circumstances it is not appropriate to attempt to

---

[2]The "informal" grievance process simply adds another layer to the administrative process. After completing the informal grievance procedure, the inmate is issued a formal grievance, which he may pursue if he is unsatisfied with the resolution of his informal grievance. See SOP IIB05-0001 § VI(B), (C).

[3]The abstract of the "Inmate Grievance Processing Manual," SOP IIB05-0001 § VI, Attach 9, states: "The purpose of this manual is to provide staff with a step by step guide for the administrative processing of inmate grievances. This manual also identifies the individual responsibilities of staff at each of the various stages of the process."

informally address or respond to an inmate's allegations due to their serious and sensitive nature. In those circumstances the inmate will be allowed to file a formal grievance without awaiting a response to an informal grievance." (Doc. no. 63, Ex. D, SOP IIB05-001 § III(A) (Inmate Grievance Processing Manual)). Grievances alleging the excessive use of force by prison staff fall into this "serious and sensitive" category. (Id. § III(A)(1)). When such an allegation is made, "[t]he Grievance Coordinator will ensure that the inmate is promptly issued a grievance form to formally address the allegation in this format if the inmate wishes to do so." (Id.). Additionally, when a grievance concerning excessive force is filed, the grievance coordinator is directed to forward an informational copy of the grievance to the Office of Professional Standards, Internal Investigations Unit ("Internal Affairs"), which will then notify the prison within fifteen (15) calendar days as to whether an investigation will be conducted regarding the grieved incident. (Id. § III(A)(2)).

**D. Administrative Remedies**

With regard to Plaintiff's utilization of the administrative grievance process following the incident, Defendants provided the affidavit of Ms. Tammy Wilkes, an Administrative Assistant at TSP. (Doc. no. 60, Ex. C, Wilkes Aff.). Ms. Wilkes stated that as part of her duties at the prison she was responsible for ensuring that the grievance procedure was properly complied with, that grievances were investigated, and that all grievance documentation was retained. (Id. ¶ 2). Ms. Wilkes stated that TSP provides, pursuant to SOP IIB05-0001 § VI, an administrative grievance process that is available to all inmates. (Id. ¶¶ 3, 6-7). Pursuant to SOP IIB05-0001 § VI, Ms. Wilkes stated that for a grievance to be considered timely, it must have been filed within five (5) days of the grieved

event, unless the timeliness requirement is waived based upon a showing of good cause by the inmate. (Id. ¶ 5).

Regarding Plaintiff's grievance history, Plaintiff filed Grievance 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 on April 11, 2003, claiming that he was subjected to excessive force on April 5, 2003. (Id. ¶ 9; doc. no. 60, Ex. H, Grievance 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). Plaintiff did not request permission to file the grievance out-of-time. The initial investigation found no evidence to support the claims and, as the grievance was filed more than five (5) days after the incident, the grievance was denied on that basis. (Doc. no. 60, Ex. C, Wilkes Aff. ¶ 9). Plaintiff did not appeal the denial of Grievance 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. (Id.).

On April 16, 2003, Plaintiff filed Grievance 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 against the medical staff at TSP, alleging that he was denied medical treatment following the April 5, 2003 incident, despite the fact that he submitted sick call forms regarding his injuries. (Id. ¶ 10; doc. no. 60, Ex. I, Grievance 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). Plaintiff voluntarily dismissed this grievance on April 18, 2003, stating that he was seen by medical staff. (Doc. no. 60, Ex. C, Wilkes Aff. ¶ 9).

On May 7, 2003, following a conversation he had with Captain Zanders and Sergeant Madison, Plaintiff filed Grievance 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, again complaining about the April 5, 2003 incident. (Id. at 11; doc. no. 60, Ex. K, Grievance 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). Plaintiff did not request permission to file the grievance out-of-time. (Doc. no. 60, Ex. C, Wilkes Aff. ¶ 11). As the grievance was filed more than five (5) days after the incident, it was dismissed on that basis. (Id.). Plaintiff did not appeal the dismissal. (Id.).

On July 2, 2003, Plaintiff filed Grievance 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, claiming that Defendant Smith harassed him for filing grievances and lawsuits regarding the April 5, 2003 incident

by denying him a shaving profile. (Id. at 12; doc. no. 60, Ex. L, Grievance 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). The Counselor recommended that this grievance be denied due to insufficient evidence. (Id.). The Warden followed the Counselor's recommendation and denied the grievance on July 22, 2003. (Id.). Plaintiff appealed. (Id.). The appellate authority denied the appeal, finding that Plaintiff's allegations of harassment by Defendant Smith could not be substantiated. (Id.).

Ms. Wilkes stated that, after a review of Plaintiff's grievance records, she determined that he did not file a timely grievance relating to his claims against Defendants. (Id. ¶¶ 3, 8). Ms. Wilkes also concluded, as summarized above, that Plaintiff never appealed the denial of any grievance regarding the April 5, 2003 incident or requested permission to file an out-of-time grievance regarding the incident. (Id. ¶ 13). As of September 15, 2006, the date Ms. Wilkes's affidavit was executed, she stated that Plaintiff never appealed the denial of Grievance 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 or Grievance 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, the only two grievances which pertained to the alleged excessive use of force by Defendants on April 5, 2003. (Id.; doc. no. 60, Exs. H, K).

Plaintiff claims, despite Defendants' contentions regarding his failure to file a timely grievance regarding the incident, failure to request permission to file an out-of-time grievance, and failure to appeal any grievance related to the incident that he, nevertheless, fully complied with the exhaustion requirements contained within the Prison Litigation Reform Act ("PLRA"). (Doc. no. 63, pp. 14-15); 42 U.S.C. § 1997(e)(a). In support of this argument, Plaintiff points to the April 11, 2003 grievance noting that it is undisputed that he filed an "informal grievance" on this date concerning the alleged excessive use of force

against him. (Doc. no. 63, pp. 14-15). With regard to the timeliness issue, Plaintiff states that because he was in lock-down isolation, he was not able to file a grievance before this date. (Id. at 15). Accordingly, Plaintiff argues that the grievance was timely because the PLRA only requires that Plaintiff pursue and exhaust "available" grievance remedies, and such remedies were unavailable until April 11, 2003. Brown v. Sikes, 212 F. 3d 1205, 1207-08 (11th Cir. 2005) (explaining the availability requirement and recognizing that a prisoner need not identify in a grievance individuals whose identities are unknown to him at the time of filing).

Additionally, with regard to Plaintiff's failure to appeal his April 11, 2003 grievance, Plaintiff states that he satisfied an exception within the grievance process such that any further appeal was unnecessary. (Doc. no. 63, pp. 15). Plaintiff states that the SOP for processing grievances alleging the excessive use of force provides an alternate procedure through which the grievance is forwarded to Internal Affairs, removing any need to carry the SOP's appeal process to its conclusion in order the satisfy the requirements of the PLRA. (Id.). As such, Plaintiff claims that this action is exempt from the normal appeal requirements typically attendant to prison grievances. (See id. at Ex. D, SOP IIB05-001 § III(A)(1), (2) (Inmate Grievance Processing Manual, Exception to Informal Grievance Requirement) (Eff. date June 1, 2004)).[4]

---

[4]As discussed in more detail below, Plaintiff bases this argument upon a prison staff procedures manual incorporated in the current version of the SOP, not the version of the SOP which was in effect at the time the incident at issue occurred. (See doc. no. 60, Ex. G; doc. no. 63, Ex. D).

Having clarified the factual background of the case, the Court turns to the merits of the motion for summary judgment.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex

[5]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B. Plaintiff's Failure to Exhaust Available Administrative Remedies**

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v.

Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998). Simply put, as the plain language of § 1997e(a) makes clear, if an administrative remedy is "available," it must be exhausted. 42 U.S.C. § 1997e(a); see also Alexander, 159 F.3d at 1326 (explaining that under PLRA courts are "to focus solely on whether an administrative remedy program is 'available'").

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. ___, 126 S.Ct. 2378, 2387 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 2385-86. (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 548 U.S. ___, 126 S.Ct. 2978 (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'"[6] Salas v. Tillman, 162 Fed. Appx. 918, 920 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155); see also Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies.").

In this case, as described above, Plaintiff makes two arguments as to why this action should not be dismissed for failure to properly exhaust administrative remedies, both of

[6]Similarly, to exhaust all available administrative remedies, an inmate must pursue an administrative appeal if his grievance is denied. Moore v. Smith, 18 F. Supp. 2d 1360, 1362 (N.D. Ga. 1998).

which focus upon Plaintiff's April 11, 2003 grievance.[7] Initially, Plaintiff claims that summary judgment should not be granted because he was he was in lock-down following the incident, and he was, therefore, unable to file a grievance within the five (5) day time period required by the SOP. (Doc. no. 63, p. 15). Notably, however, Plaintiff first makes this argument in his response to Defendants' motion for summary judgment, and this statement is not supported by any evidence. A review of the exhibits submitted along with Plaintiff's response does not reveal any documentation to support the claim that Plaintiff was denied a grievance until six (6) days after the incident. Furthermore, once Plaintiff did file a grievance regarding the incident, Plaintiff never made any assertion that his untimely grievance met the requisite good cause standard by requesting permission to file the grievance out-of-time, nor did Plaintiff appeal the denial the grievance.

Simply put, even assuming *arguendo* (which the Court does not) that Plaintiff was prevented from pursuing administrative remedies within the initial five-day period, Plaintiff's failure to pursue an out-of-time grievance after he had gained access to the grievance process requires the Court to dismiss the instant suit under § 1997e(a). See Johnson, 418 F.3d at 1155; Harper, 179 F.3d at 1312. Once administrative remedies became available, Plaintiff was obliged to exhaust them before filing suit. See Hilton v. Secretary for Dep't of Corr., 170 Fed. Appx. 600, 605 (11th Cir. Nov. 1, 2005). In Hilton, a state prisoner alleged that he could not exhaust administrative remedies because he was denied grievance forms while in "administrative confinement." Id. The Eleventh Circuit explained that "Hilton's contention

[7]Although Plaintiff's arguments, and the Court's analysis, focus on the April 11, 2003 grievance, the reasoning set forth *infra* is equally applicable to Plaintiff's subsequently filed grievance, 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, which also complained about the April 5, 2003 incident.

. . . [did] not entitle him to relief because he fail[ed] to allege that he was unable to obtain these forms once he was released from confinement." Id. Thus, albeit in an unpublished opinion, the Eleventh Circuit has endorsed this Court's view that once the impediment to exhaustion is removed, an inmate's failure to properly utilize administrative remedies can no longer be justified.

Under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"[8] Johnson, 418 F.3d at 1155, 1156. Likewise, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. As the Court has noted *supra*, the plain language of § 1997e(a) forbids any inquiry except into whether administrative remedies are "available."

In order to demonstrate that administrative remedies were unavailable Plaintiff must point to specific facts showing that prison staff inhibited him from utilizing the grievance process. See Boyd v. Corr. Corp. of Am., 380 F.3d 989, 998 (6th Cir. 2004) ("nonspecific allegations of fear" and "subjective feeling[s] of futility" no excuse for failure to exhaust administrative remedies). Plaintiff cannot show that administrative remedies were unavailable simply by making a blanket allegation without any supporting evidence. Of

[8]Whether that possibility may be slight is irrelevant. The Eleventh Circuit has explained that, even if the likelihood of obtaining administrative relief is akin to that of being struck by lightning, an inmate must still exhaust administrative remedies. See Alexander, 159 F.3d at 1325 (quoting Irwin v. Hawk, 40 F.3d 347, 349 (11th Cir. 1994) ("No doubt denial *is* the likeliest outcome, but that is not sufficient reason for waiving the requirement of exhaustion. Light[]ning may strike; and even if it doesn't, in denying relief the [administrative authority] may give a statement of its reasons that is helpful to the district court in considering the merits.")).

course, those federal courts to consider the issue have held that threats of violent reprisal can, under certain circumstances, render administrative remedies "unavailable" or otherwise justify an inmate's failure to pursue them. See, e.g., Hemphill v. New York, 380 F.3d 680, 686-91 (2d Cir. 2004). More generally, courts have held that prison officials may, as a result of their own conduct, become equitably estopped from relying upon § 1997e(a).[9, 10]

Of particular note, in Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999), the Eleventh Circuit explained that prison officials cannot "unequivocally" tell an inmate that resort to administrative remedies is "precluded" or "even prohibited" and then rely upon § 1997e(a) to argue that the inmate failed to exhaust available administrative remedies. Taken together, these cases stand for the simple proposition that prison officials should not benefit from conduct which inhibits an inmate from properly exhausting administrative remedies. That principle of law does not alter the key inquiry--whether administrative remedies were actually "available" to Plaintiff prior to the filing of the instant suit. As set forth above, Plaintiff has failed to demonstrate that administrative remedies were unavailable following the alleged excessive use of force.

Plaintiff also contends that because the April 11, 2003 grievance regarding the alleged excessive use of force was forwarded to Internal Affairs, the grievance did not need

---

[9]See, e.g., Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (*per curiam*); Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001); Wright v. Hollingsworth, 260 F.3d 357, 358 n.2 (5th Cir. 2001).

[10]To the extent Plaintiff is arguing that Defendants should be estopped from relying on § 1997e(a) because of their own misconduct, it is his burden to establish his entitlement to this equitable remedy. See Lewis v. Washington, 300 F.3d 829, 834 (7th Cir. 2002).

to be appealed to satisfy the exhaustion requirement and, therefore, if the grievance was considered timely for the purpose of an Internal Affairs investigation, administrative remedies were properly exhausted. (Doc. no. 65, p. 15). Although it does appear that Plaintiff's grievance was forwarded to Internal Affairs, which declined to investigate the incident, Plaintiff does not point to any case law or language within the SOP itself to support this alleged exception to the requirement that a prisoner fully exhaust administrative remedies by appealing to the highest level. (Doc. no. 60, Ex. H, p. 2).

The section referenced by Plaintiff, which is contained within the present version of the SOP not the version in effect at the time of the April 2003 incident, merely recognizes the futility of attempting to resolve serious grievances, such as those alleging excessive force, though informal means. As such, inmates alleging that they were the victims of excessive force are entitled to skip the informal stage of the administrative process and, due to the serious nature of the allegations, these grievances are also forwarded to Internal Affairs, which may choose to independently investigate the matter. However, nowhere in the SOP, past or present, does it state or imply that an inmate has exhausted all available administrative remedies once a grievance is forwarded to Internal Affairs. Conversely, the procedures manual referenced by Plaintiff states that "the inmate [should be] promptly issued a grievance form to formally address the allegation in this format if the inmate wishes to do so," which is a clear indication that additional administrative remedies are available to the inmate. (Doc. no. 63, Ex. D, SOP IIB05-001 § III(A)(1)).

Additionally, the alleged exception Plaintiff references is contained within the current verison of the Inmate Grievance Processing Manual, not the version of the SOP which was

in effect at the time the incident occurred. In fact, the version of the SOP in effect at the time of the alleged incident did not even include the informal grievance level of the administrative process, which prisoners alleging certain categories of grievances are permitted to sidestep. As such, Plaintiff clearly has not demonstrated exhaustion of administrative remedies based upon this claimed exception.

## III. CONCLUSION

For the above reasons, the Court **REPORTS** and **RECOMMENDS** that the motion for summary judgment be **GRANTED** (doc. no. 57), that Plaintiff's case be **DISMISSED** without prejudice for failure to exhaust administrative remedies, and that this civil action be **CLOSED**.[11]

SO REPORTED and RECOMMENDED this 22nd day of February, 2007, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

[11]The Court's conclusion in this regard pretermits consideration of Defendants' remaining arguments.